## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| HERIBERTO HERNANDEZ, | CASE NO. 1:25-cv-01102 |
| Plaintiff, | JUDGE CHARLES ESQUE FLEMING |
| vs. | MAGISTRATE JUDGE AMANDA M. KNAPP |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Plaintiff Heriberto Hernandez seeks judicial review of the final decision of Defendant Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  (ECF Doc. 1, ECF Doc. 9.)  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.

For the reasons set forth below, the undersigned recommends that the Court **AFFIRM** the Commissioner's final decision.

### I.      Procedural History

Plaintiff filed his DIB and SSI applications on February 3, 2023, alleging an onset date of December 22, 2022.[1]  (Tr. 14, 212-18, 219-20.)  He alleged disability due to post-status lower back surgery, arthritis, spinal stenosis, depression, post-traumatic stress disorder, and anxiety. (Tr. 128, 139, 242.)  Mr. Hernandez's applications were denied initially and upon

---

[1] Mr. Hernandez filed earlier applications for DIB and SSI in March 2021, alleging disability beginning March 13, 2020 (Tr. 52), which were denied in an Administrative Law Judge decision on December 22, 2022 (Tr. 14, 49-74).

1

reconsideration (Tr. 124-33, 136-43), and he requested a hearing (Tr. 144-45). After conducting a hearing on Mr. Hernandez's claims (Tr. 33-48), an Administrative Law Judge ("ALJ") issued a decision denying his applications on April 25, 2024 (Tr. 11-32). On April 1, 2025, the Appeals Council denied Mr. Hernandez 's request to review the ALJ decision, making the April 25, 2024 decision the final decision of the Commissioner. (Tr. 1-6.)

Mr. Hernandez filed his Complaint on May 28, 2025, challenging the Commissioner's final decision denying his applications for disability benefits. (ECF Doc. 1.) The matter is fully briefed. (ECF Docs. 9, 11 & 12.) Mr. Hernandez raises one issue in this appeal. (ECF Doc. 9, p. 2.) He asserts that the ALJ's finding that there was "a lack of medical necessity for Plaintiff's cane . . . lacked the support of substantial evidence[.]" (ECF Doc. 9, pp. 2-3.)

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Mr. Hernandez was born in 1970 and was 52 years old on the alleged disability onset date, making him an individual closely approaching advanced age. (Tr. 26.) He has a tenth-grade education. (Tr. 243.) Mr. Hernandez previously worked as an auto detailer and rubber cutting machine tender. (Tr. 37.) He stopped working in March 2020. (Tr. 242.)

### B. Medical Evidence

#### 1. Relevant Treatment History

In December 2020, Mr. Hernandez underwent a lumbar laminectomy. (Tr. 369.) On January 12, 2022, he presented to Rachel Adolph, PA-C at CCF Lakewood FHC, reporting that his radiating leg pain had improved since his surgery but his low back pain had worsened. (Tr. 373.) His "ambulatory status" was noted as: "independent community distances." (Tr. 374.) On examination, his gait, muscle strength, and sensation were normal. (Tr. 375.) PA Adolph

2

ordered imaging due to Mr. Hernandez's complaints of worsening post-operative symptoms. (Tr. 376.)  When Mr. Hernandez presented for an MRI on January 21, 2022, he ambulated without an assistive device.  (Tr. 372.)

On March 2, 2022, Mr. Hernandez presented for a pain management visit with Joseph Abdelmalak, M.D., at Fairview Health Center.  (Tr. 366.)  He complained of low back pain radiating into his bilateral buttock area.  (Tr. 369.)  Except for prescription pain medication, Mr. Hernandez had not used medical devices or tried other conversative treatments.  (Tr. 367-77.)  His examination noted tenderness on palpation over the lumbar spine and pain reproduced with extension of the lumbar spine.  (Tr. 368.)  His gait was normal.  (*Id.*)  Dr. Abdelmalak prescribed medication and recommended home exercises and a caudal epidural injection.  (Tr. 369.)

On April 6, 2022, Sameh Rizkal Yonan, M.D., administered the caudal epidural injection. (Tr. 362-66.)  On June 24, 2022, Mr. Hernandez called the pain management department at Fairview Health Center, reporting that the caudal epidural block he had on April 6, 2022, provided no relief and requesting a prescription for a cane.[2]  (Tr. 360.)  Per instructions from Anne Hanzel, APRN, CNP, Mr. Hernandez was advised that he would need to make an office appointment to have his need for an assistive device evaluated.  (*Id.*)

On November 15, 2022, Mr. Hernandez presented to his internal medicine physician Eung Jae Yoo, M.D., for an annual physical.  (Tr. 353-56.)  He complained of persistent low back pain and general weakness, tiredness, and fatigue.  (Tr. 353.)  His examination noted tenderness in the lower back.  (Tr. 355.)  His gait was slow with limited range of motion in his

---

[2] On February 28, 2022, Saad Munzar, M.D., an internal medicine physician with CCF Lakewood FHC, printed an unspecified order for Mr. Hernandez based on a telephone encounter.  (Tr. 369.)  Approximately one week later, on March 9, 2022, Stephanie Decapua, M.A., with CCF Lakewood FHC, left Mr. Hernandez a voicemail, asking whether he would like to pick up the order for his cane or have it faxed to him.  (Tr. 370.)  On March 23, 2022, MA Decapua mailed an "unable to reach letter" to Mr. Hernandez's address on file.  (*Id.*)  Thus, the record suggests that Mr. Hernandez also discussed a prescription for a cane with a provider earlier in 2022.

back.  (*Id.*)  He was referred for physical therapy for low back pain.  (*Id.*)  Dr. Yoo did not prescribe an assistive device and there is no indication that Mr. Hernandez ambulated with an assistive device during the appointment.  (Tr. 353-56.)  On December 7, 2022, Mr. Hernandez was not using an assistive device when he presented for a radiology appointment.  (Tr. 349.)

On January 17, 2023, Mr. Hernandez attended a follow up appointment with Dr. Yoo. (Tr. 345.)  He complained of low back pain with intermittent swelling and radiating pain into the hip joint area.  (Tr. 346.)  Dr. Yoo noted that Mr. Hernandez had a long history of back pain and followed with spine and pain medicine.  (*Id.*)  He last saw spine medicine a year earlier and was advised to continue to follow with spine medicine.  (*Id.*)  On examination, Mr. Hernandez's gait was normal and his sensation was grossly intact.  (Tr. 347.)  There was no musculoskeletal joint swelling, deformity, or tenderness.  (*Id.*)  Dr. Yoo did not prescribe an assistive device and there is no indication that Mr. Hernandez ambulated with an assistive device.  (Tr. 345-48.)

On March 21, 2023, Mr. Hernandez returned to Dr. Yoo.  (Tr. 493.)  He complained of upper back pain that interfered with his daily life.  (Tr. 494.)  On examination, Mr. Hernandez's gait was normal and his sensation was grossly intact.  (Tr. 347.)  There was no musculoskeletal joint swelling, deformity, or tenderness.  (Tr. 495.)  Dr. Yoo referred Mr. Hernandez for massage therapy and pain management.  (Tr. 495-96.)  He did not prescribe an assistive device and there is no indication that Mr. Hernandez ambulated with an assistive device.  (Tr. 494-96.)

On August 1, 2023, Mr. Hernandez presented to licensed clinical psychologist Tom Ference, Ph.D., MPH, for a consultative psychological evaluation.  (Tr. 434-39.)  Dr. Ference noted that Mr. Hernandez ambulated slowly, used a cane, and appeared to be in physical discomfort when attempting to stand and sit.  (Tr. 437.)

4

On September 8, 2023, Mr. Hernandez returned to Dr. Yoo.  (Tr. 474.)  Dr. Yoo noted that Mr. Hernandez had not followed through on the March referrals for massage therapy and pain management.  (Tr. 475.)  Mr. Hernandez complained of persistent lower back pain, and reported that the pain interfered with his daily activities and that his walking was unstable.  (*Id.*)  There was no indication that Mr. Hernandez ambulated with an assistive device, but his gait and station were slow on examination and tenderness was noted in his lower back.  (Tr. 476.)  His sensation and muscle strength were normal.  (*Id.*)  His diagnoses included: chronic midline low back pain, unspecified whether sciatica present; status post laminectomy; and chronic lower back pain with intermittent swelling.  (Tr. 476-77.)  Dr. Yoo made the following notation: "fall precaution."  (Tr. 476.)  He prescribed a cane and recommended that Mr. Hernandez continue to follow with orthopedic surgery and use a cooling pad, Voltaren gel, and Tylenol.  (*Id.*)

On October 3, 2023, Mr. Hernandez presented to Dr. Yoo for a disability evaluation.  (Tr. 466.)  Dr. Yoo noted that a cane had been ordered for "ambulation, but [the] order [wa]s still pending."  (*Id.*)  Mr. Hernandez reported chronic lower back pain that interfered with his daily activities and prevented him from working.  (*Id.*)  Dr. Yoo completed the disability paperwork.  (*Id.*)  There was again no indication that Mr. Hernandez ambulated with an assistive device, but his gait and station were slow on examination, with tenderness noted in his lower back.  (Tr. 468.)  His sensation and muscle strength were normal.  (*Id.*)  He was diagnosed with chronic midline low back pain with bilateral sciatica, L4-5 decompression, chronic lower back pain with intermittent swelling, status post connective tissue and disc stenosis of intervertebral foramina of lumbar region, and spinal stenosis of lumbar region with neurogenic claudication.  (*Id.*)  He was advised to continue to follow with orthopedic surgery and use a cooling pad, Voltaren gel, Tylenol, and Lyrica.  (*Id.*)  Dr. Yoo noted "fall precaution" and ordered a cane.  (*Id.*)

5

On December 12, 2023, Mr. Hernandez returned to Dr. Yoo for follow up.  (Tr. 717.)  Dr. Yoo noted that Mr. Hernandez's last visit was on October 3, when disability paperwork was filled out and signed.  (*Id.*)  Mr. Hernandez reported worsening of his low back pain and leg weakness.  (*Id.*)  He last saw neurosurgery in September and a repeat hip x-ray and lumbar MRI were recommended.  (*Id.*)  The lumbar MRI showed: "[s]table postoperative findings with residual multilevel lumbar spondylosis and superimposed congenital canal stenosis"; "[n]o high-grade canal narrowing"; "[m]ultilevel neuroforaminal stenosis"; and "[n]o substantial change in severity compared to prior exam 01/21/2022."  (*Id.*)  Mr. Hernandez was advised to contact neurosurgery for further management.  (*Id.*)  On examination, Mr. Hernandez's gait and station were slow and lower back tenderness was noted.  (Tr. 720.)  His sensation and muscle strength were normal.  (*Id.*)  He was diagnosed with chronic midline low back pain with bilateral sciatica and intermittent swelling.  (*Id.*)  He was instructed to continue to follow with neurosurgery and use a heating pad, Voltaren gel, Tylenol, and Lyrica.  (*Id.*)  Dr. Yoo noted "fall precaution" and also noted that physical therapy might be considered following his neurosurgery visit.  (*Id.*)  Under Mr. Hernandez's list of medications, a cane was indicated.  (Tr. 720.)

On January 8, 2024, Mr. Hernandez presented to Rachel Albright, PA-C, at the Spine Institute.  (Tr. 622-29.)  He reported continued low back pain with spasms, in addition to hip pain and intermittent posterior thigh pain.  (Tr. 625.)  He described numbness and tightness in his bilateral feet.  (*Id.*)  His pain was aggravated by most activities, and he was unable to find relief in any position.  (*Id.*)  He also reported mid-back pain and spasms when his low back pain increased.  (*Id.*)  His "ambulatory status" was listed as "impaired community distances."  (*Id.*)  On examination, Mr. Hernandez's gait was antalgic.  (Tr. 628.)  His sensory and motor strength were normal.  (*Id.*)  Under Mr. Hernandez's list of medications, a cane was indicated.  (Tr. 626.)

6

PA Albright recommended epidural steroid injections at the L3-L4 with a consult to physical therapy following the trial of injections.  (Tr. 628.)

On March 11, 2024, Mr. Hernandez returned to AP Albright.  (Tr. 694-99.)  He reported 50% symptom improvement following the L3-L4 injections.  (Tr. 699.)  On examination, Mr. Hernandez's sensory and motor strength were normal.  (Tr. 698.)  His gait was antalgic, with tenderness to palpation of his bilateral trochanteric bursa.  (*Id.*)  PA Albright recommended a trial of bilateral trochanteric bursa injections with physical therapy to start following the injection.  (*Id.*)  Under Mr. Hernandez's list of medications, a cane was indicated.[3]  (Tr. 696.)

### 2.    Relevant Opinion Evidence

On October 3, 2023, Dr. Yoo completed a Physical Impairment Questionnaire.  (Tr. 455-58.)  Dr. Yoo checked boxes indicating he had prescribed an assistive device—a cane—for ambulation and balance.  (Tr. 457.)

### C.    Hearing Testimony

At a hearing on April 3, 2024, Mr. Hernandez testified in response to questions from his attorney and the ALJ.  (Tr. 38-44.)  He testified that he used a cane to go up and down stairs (Tr. 38) and for long distances (Tr. 40).  He also testified to issues with falls, noting he "could be walking down the hall" and "almost fall over" and would have "to catch [him]self[.]"  (*Id.*)

A Vocational Expert ("VE") also testified at the hearing.  (Tr. 44-48.)  The VE testified that a hypothetical individual of Plaintiff's age, education, and work experience, with the functional limitations described in the ALJ's RFC determination (Tr. 19, 44-45), could perform representative positions in the national economy, including routing clerk, marker, and collator operator, all light positions (Tr. 45).  If the hypothetical individual "would sometimes require a

---

[3] Other medical records also include cane in the list of medications.  (Tr. 609, 645, 647, 662, 664, 676.)

cane as a falling precaution," the VE testified that light employment would be eliminated. (Tr. 46.) The VE agreed with the ALJ that there were light jobs—electronics worker, assembler of electrical accessories, and mail clerk—that could be performed sitting or standing, but also testified that an individual would have to be able to lift and carry 20 pounds with one arm if he had to move parts from his workstation with the use of a cane. (Tr. 46-48.)

**D.      Third-Party Function Report**

On April 25, 2023, Mr. Hernandez's daughter completed a Third-Party Function Report. (Tr. 250-57.) She said her father's medical conditions affected his ability to lift, stand, walk, complete tasks, concentrate, and sit. (Tr. 250.) He could do house and yardwork, but it took him a while. (Tr. 252, 253.) He spent 45 minutes every two weeks mowing the grass. (Tr. 253.) She said her father was not prescribed a cane, but used one to go up and down stairs. (Tr. 256.)

### III.      Standard for Disability

Under the Social Security Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).

To make a determination of disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations, summarized as follows:

8

1.  If the claimant is doing substantial gainful activity, he is not disabled.

2.  If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4.  If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work.  If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[4] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.

*See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the

Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors

to perform other work available in the national economy.  *Id.*

### IV.    Law & Analysis

**A.    Standard of Review**

A reviewing court must affirm the Commissioner's conclusions absent a determination

that the Commissioner has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d

---

[4] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, in most instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

399, 405 (6th Cir. 2009) ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Although an ALJ decision may be supported by substantial evidence, the Sixth Circuit has explained that the "'decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651

10

(6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-547 (6th Cir. 2004))).  A decision will also not be upheld where the Commissioner's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**B.     Sole Assignment of Error: The ALJ Did Not Err in Finding Plaintiff's Cane Was Not Medically Necessary**

In his sole assignment of error, Mr. Hernandez challenges the ALJ's finding that there was "a lack of medical necessity for Plaintiff's cane," arguing this finding "lacked the support of substantial evidence[.]"  (ECF Doc. 9, pp. 2-3.)  He further asserts that the finding is material because the VE testified that "the use of a cane would eliminate light employment" and "SSA's Medical-Vocational Grid Rule 201.09 or 201.10, would have allowed a finding of disabled for [him] if he were unable to perform his past work and was limited to work at the Sedentary exertional level."[5]  (*Id.* at p. 10.)  In response, the Commissioner argues that "[s]ubstantial evidence supports the ALJ's determination that Plaintiff did not require a cane because his cane was not medically required" under Social Security Ruling SSR 96-9p.  (ECF Doc. 11, p. 2.)

The Sixth Circuit has explained that a hand-held assistive device "cannot be considered an exertional limitation" for purposes of an RFC if it "was not a necessary device for claimant's use."  *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002); *see also Drew v. Comm'r of Soc. Sec. Admin.*, No. 1:23-CV-01353-DAC, 2024 WL 2294784, at *9 (N.D. Ohio May 21, 2024) ("The ALJ is not required to incorporate the use of a cane in the RFC unless the cane is

---

[5] The ALJ found that Mr. Hernandez had the RFC to perform light work with the following limitations: occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl; frequently reach laterally; occasionally reach overhead with the left non-dominant upper extremity; no exposure to work at unprotected heights; no exposure to hazardous machinery, such as power saws or jack hammers; and no commercial driving.  (Tr. 19.)

11

medically required.") (citing *Carreon*). Under Social Security Ruling 96-9p, an ALJ may only "find that a hand-held assistive device is medically required" if the record contains "medical documentation" that: (1) "establish[es] the need for a hand-held assistive device to aid in walking or standing"; and (2) "describ[es] the circumstances for which [the device] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 61 Fed. Reg. 34478, 34482 (July 2, 1996).

As to the first requirement, SSR 96-9p calls for medical documentation of "the need for a hand-held assistive device to aid in walking or standing," not simply provider notations that a claimant was observed using an assistive device. 61 Fed. Reg. at 34482; *see Barnes v. Comm'r of Soc. Sec.*, No. 5:21-CV-01688-JDA, 2023 WL 2988346, at *8 (N.D. Ohio Mar. 22, 2023) (collecting cases) ("[T]he fact that various physicians noted Mr. Barnes' use of a cane or a walker does not establish that an assistive device was medically necessary for purposes of SSR 96-9p."); *Phillips v. Comm'r of Soc. Sec.*, No. 5:20-CV-01718-CEH, 2021 WL 5603393, at *10 (N.D. Ohio Nov. 30, 2021) ("Although various medical records note that Claimant presented at appointments using a cane, these notations do not meet the requirements of SSR 96–9p.").

As to the second requirement, SSR 96-9p calls for medical documentation "describing the circumstances for which [the device] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)," not simply a prescription for a device. 61 Fed. Reg. at 34482; *see Barnes*, 2023 WL 2988346, at *8 (collecting cases). This is consistent with the Seventh Circuit's holding that SSR 96–9p requires an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary." *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012); *see also Spaulding v. Astrue*, 379 F. App'x 776, 780 (10th Cir. 2010) ("[T]he legal issue does not turn on

12

whether a cane was 'prescribed' for Spaulding, but whether a cane was 'medically required.');

*Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (finding prescription and references to

use of cane without discussion of medical necessity to be insufficient to show medical necessity).

Here, the ALJ assessed Mr. Hernandez's claim that he needed a cane by considering the

requirements of SSR 96-9p in the context of the whole evidentiary record, including the function

report from Mr. Hernandez's daughter, Mr. Hernandez's longitudinal medical history, and Dr.

Yoo's cane prescription (Tr. 20-24), but found the evidence did "not support the medical

necessity for the use of a cane" (Tr. 24).  In reaching this conclusion, the ALJ explained:

> In light of this longitudinal history during the current adjudicating period, the undersigned is not persuaded by Dr. Yoo's notation on a medical source statement from October 3, 2023, that indicated that he had prescribed the claimant a cane because he referred the claimant to his pain management specialist for treatment related to his lumbar pain and his records do not provide any follow-up with his Dr. Abdelmalek or Dr. Yonan, or a medical need for an assistive device that is established by a prescription based on a review of his treatment notes through January 2023, (Exh B6F; B9F, duplicate of Exh. B6F; *but see* Exh. B2F, pp. 7-8). Moreover, the most recent examination findings of January 8, 2024, do not support the medical necessity for the use of a cane. Physical exam findings document motor strength of 5/5 in all muscle groups, normal sensory exam and he did not present with the use of a cane, though his gait was antalgic. An antalgic gait does not mandate the use of a cane.

(*Id.*)  Mr. Hernandez argues substantial evidence did not support the ALJ's finding of "a lack of

medical necessity for Plaintiff's cane" because: "the record contains multiple references as to the

use of a prescribed cane"; "the record contains multiple references to the concern by Plaintiff's

doctor as to fall precautions"; "the ALJ frequently cites to evidence that . . . is actually before

Plaintiff alleged he was using the cane or the medical record said that he needed the cane -- some

of these citations are even before the alleged onset date"; and "the ALJ 'played doctor' in finding

that an antalgic gait does not mandate the use of a cane."  (ECF Doc. 9, pp. 2-3.)

13

Importantly, the question before this Court is not whether Mr. Hernandez can present facts to support a finding of medical necessity.  Even if the record contains substantial evidence to support such a finding, this Court cannot overturn the ALJ's finding to the contrary "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477.  This Court is tasked only with determining whether the ALJ *lacked* substantial evidence to support her finding that the use of a cane was not medically necessary in this case.

The undersigned concludes that the ALJ's finding has the support of substantial evidence. Notwithstanding Mr. Hernandez's citations to record evidence showing "use of a prescribed cane" and "concern by Plaintiff's doctor as to fall precautions," SSR 96-9p requires not only medical documentation of "the need for a hand-held assistive device to aid in walking or standing," but also medical documentation "describing the circumstances for which [the cane] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."  61 Fed. Reg. at 34482; *see Barnes*, WL 2988346, at *8 (collecting cases).  Thus, a prescription for an assistive device alone does not satisfy the medical necessity requirements of SSR 96-9p.  61 Fed. Reg. at 34482.

Plaintiff argues Dr. Yoo's assertion that he "needed a cane for both balance and ambulation" provides the "circumstances in which the cane was used."  (ECF Doc. 9, p. 12.) This argument is unavailing.  Although Dr. Yoo reported Plaintiff needed a cane for ambulation and balance (Tr. 457), he did not sufficiently describe "the circumstances for which [the cane] [wa]s needed," as required under SSR 96-9p.  For instance, he did not indicate whether Mr. Hernandez needed to use a cane "all the time, periodically, or only in certain situations."  61 Fed. Reg. at 34482; *see, e.g.*, *Thacker v. Comm'r of Soc. Sec.*, No. 3:21 CV 1617, 2022 WL 3369533, at *3 (N.D. Ohio Aug. 16, 2022) (discussing *Wright v. Saul*, 2019 WL 3729264, at *3 (N.D.

14

Ohio), which found that a doctor's "notation that Plaintiff needs a cane 'for ambulation' [did] not satisfy" SSR 96-9p's medical documentation requirement). Neither Plaintiff's testimony nor his own reports to his medical providers regarding his need for a cane (ECF Doc. 12, p. 3) are adequate substitutes for the "medical documentation" required under SSR 96-9p.

Thus, Mr. Hernandez has failed to identify "medical documentation" that "describe[es] the circumstances for which [the cane] is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." 61 Fed. Reg. at 34482. Given the clear absence of an "unambiguous opinion . . . stating the circumstances in which [the] assistive device is medically necessary," the undersigned concludes that Mr. Hernandez has failed to show the ALJ lacked substantial evidence to support her finding that an assistive device was not medically necessary. *Thacker*, 2022 WL 3369533, at *3 (quoting *Tripp*, 489 F. App'x at 955); *see also Barnes*, WL 2988346, at *8 (collecting cases) ("Mr. Barnes has failed to identify any records describing the precise circumstances in which an assistive device was medically necessary and has thus not met the requirements of SSR 96-9p.").

Mr. Hernandez's argument that the ALJ's decision lacks the support of substantial evidence or a logical bridge because the ALJ cited visits occurring before the alleged onset date of December 22, 2022, or before the cane was prescribed in September 2023 (ECF Doc. 9, pp. 11-12), is also unavailing. The ALJ was not barred from considering record evidence predating the alleged onset date or the cane prescription. Indeed, the regulations provide that the Social Security Administration "will consider all evidence in your case record" when determining whether a claimant is disabled. 20 C.F.R. § 404.1520. And the Sixth Circuit has long recognized that "evidence presented at an earlier hearing or predating the onset of disability, when evaluated

15

*in combination with later evidence*, may help establish disability." *DeBoard v. Comm'r of Soc. Sec.*, 211 F. App'x 411, 414 (6th Cir. 2006) (emphasis in original).

Mr. Hernandez's argument that "the ALJ 'played doctor' in finding that an antalgic gait does not mandate the use of a cane" (ECF Doc. 9, pp. 13-14) also lacks merit. "The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician." *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing *See* 20 C.F.R. §§ 404.1546(c); 416.946(c)). And the Sixth Circuit has "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) (citing *Shepard v. Comm'r of Soc. Sec.,* 705 F. App'x 435, 442-43 (6th Cir. 2017); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013)). As discussed above, SSR 96-9p outlines the requirements for a finding of medical necessity, which the ALJ considered in light of the evidence of record, including evidence of Mr. Hernandez's antalgic gait. (Tr. 22, 23.) This Court cannot overturn the ALJ's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. The ALJ's finding that "[a]n antalgic gait does not mandate the use of a cane" is not at odds with SSR 96-9p, and the undersigned concludes that the lack of a medical opinion directly supporting that specific finding does not deprive the finding of substantial evidence.

For the reasons set forth above, the undersigned concludes that Mr. Hernandez has not met his burden to show that the ALJ's finding regarding medical necessity lacked the support of substantial evidence, and further that the ALJ's stated reasoning creates a logical bridge between the evidence and the result, allowing this Court to conduct a meaningful review of the decision. The undersigned accordingly finds Mr. Hernandez's sole assignment of error is without merit.

### V.      Recommendation

For the foregoing reasons, the undersigned recommends that the Court **AFFIRM** the Commissioner's decision.

July 31, 2026

*/s/Amanda M. Knapp*
AMANDA M. KNAPP
United States Magistrate Judge

### **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).